IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARGARET D. SULLIVAN, )
 )
    Plaintiff, )
 )
v. ) No. 3:14-cv-00756
 ) Senior Judge Haynes
HOSPITAL AUTHORITY OF THE )
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY, )
 )
    Defendant. )

**MEMORANDUM**

Plaintiff, Margaret D. Sullivan, filed this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117 and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., against the Defendant Hospital Authority of the Metropolitan Government of Nashville and Davidson County d/b/a Nashville General Hospital at Meharry. Plaintiff alleges that the Defendant discriminated against her and constructively discharged her on the basis of her disability, her requests for accommodations, for exercising her rights under the FMLA, and submitting leave requests for her necessary medical treatment.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 24), contending: (1) that Plaintiff's proof fails to show a causal connection between any specific action taken by the Defendant and Plaintiff's disability; (2) that Plaintiff's resignation was not a constructive discharge because Plaintiff did not utilize the appeals process available to her; (3) that, even if Plaintiff's resignation were a constructive discharge, Plaintiff's history of poor performance was a legitimate non-discriminatory reason for the Defendant's employment acts; and (4) that Plaintiff's proof fails to make a prima facie showing of FMLA retaliation. In her response (Docket

Entry No. 30), Plaintiff contends that genuine issues of material fact render summary judgment inappropriate for her ADA discrimination and FMLA retaliation claims. Defendant filed a reply. (Docket Entry No. 31).

For the reasons set forth below, the Court concludes that the Defendant's motion for summary judgment (Docket Entry No. 24) should be granted.

## A. Findings of Fact[1]

On January 9, 2009, Defendant hired Plaintiff as a Health Information Management Specialist. (Docket Entry No. 30, Plaintiff's Response to Defendant's Motion for Summary Judgment, at 1). Plaintiff was a civil service employee. (Docket Entry No. 25, Metro's Statement of Undisputed Material Facts, at ¶ 1). Plaintiff's immediate supervisor was Melissa Gannon and the head of her department was Bonnie Paugh. (Docket Entry No. 25 at ¶¶ 7-8; Docket Entry No. 30 at 2). Plaintiff's supervisors and co-workers observed deficiencies in Plaintiff's work on a weekly and sometimes daily basis. (Docket Entry No. 25 at ¶ 7). Plaintiff's supervisors and co-workers were often assigned reviews of Plaintiff's work to correct Plaintiff's mistakes or omissions. Id. at ¶ 8. Plaintiff contends that all of her co-workers made mistakes that Gannon corrected. (Docket Entry No. 30 at 2). Plaintiff also contends that Gannon sometimes brought mistakes to her co-workers' attention and advised them to be more careful. Id.

---

[1]Defendant filed contemporaneously with its motion for summary judgment a statement of undisputed material facts (Docket Entry No. 25), in accordance with Local Rule 56.01(b). Plaintiff has not filed a response to Defendant's statement of undisputed facts as required by Local Rule 56.01(c) ("The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant."). Accordingly, Defendant's proffered statements of fact are undisputed for purposes of summary judgment. Local Rule 56.01(g). However, the Court will consider the facts in the record that Plaintiff points to in her response to Defendant's motion for summary judgment that do not contradict the Defendant's undisputed facts.

During Plaintiff's employment, Plaintiff had four surgeries, including: for acute appendicitis; a colon resection due to cancer; a hernia repair from the colon resection to her lower abdomen; and a hernia repair from the colon resection to her upper abdomen. Id. at 1-2. Plaintiff took FMLA leave for each surgery. Id. Plaintiff contends that she was re-trained when she returned to work after each surgery, and that she "needed time to get her speed back up in order to fulfill her job responsibilities." Id. Plaintiff contends that Gannon and Paugh initially allowed Plaintiff this time but became more critical after each surgery. Id. Plaintiff contends that, after she took FMLA leave for her surgeries, Gannon "began finding fault in her work" and stopped correcting her mistakes or informing her when she made repetitive errors. Id.

During Plaintiff's three-and-a-half year employment, Plaintiff received seven warnings, counseling sessions, or improvement plans. (Docket Entry No. 25 at ¶ 9). On March 11, 2009, Plaintiff received notice on her two month Probationary Evaluation that she needed improvement and was placed on a thirty-day Performance Improvement Plan. Id. On February 11, 2010, Plaintiff was placed on a fourteen-day Performance Improvement Plan. Id. On May 17, 2011, Plaintiff was placed on a thirty-day Performance Improvement Plan for lack of productivity. Id. On July 13, 2012, Plaintiff received written counseling for performance below productivity goals. Id. On July 24, 2012, Plaintiff received a final written warning for inefficient performance with daily review. Id. On July 25, 2012, Plaintiff was placed on seven-day daily work review. Id.

On August 2, 2012, after Plaintiff told Gannon about her fourth surgery, Plaintiff met with Gannon and Paugh. Id. at ¶ 2; (Docket Entry No. 30 at 2). Gannon and Paugh were beginning to initiate disciplinary proceedings. (Docket Entry No. 25 at ¶¶ 2, 10). Plaintiff contends that, after she informed Gannon of her upcoming surgery date, Gannon began addressing Plaintiff's mistakes over

3

the prior month that were not previously brought to Plaintiff's attention. (Docket Entry No. 30 at 2-3). Paugh informed Plaintiff of the need for a disciplinary hearing due to Plaintiff "incorrectly placing patients' medical records into other patients' medical records" on multiple occasions, including "plac[ing] a patient's entire chart into the medical file of another patient." (Docket Entry No. 25 at ¶ 10). Gannon and Paugh told Plaintiff that her mistakes could result in patient deaths and that they could not allow such errors. Id. at ¶¶ 7, 10. Plaintiff contends that Gannon read from a form on Plaintiff's termination. (Docket Entry No. 30 at 3). Plaintiff states that Paugh told her that the "Board would decide her fate," and then yelled, and slammed her hand down in a threatening manner. Id. According to Plaintiff, Paugh denied her offer to submit a two-week notice. Id. Plaintiff then resigned. (Docket Entry No. 25 at ¶¶ 1, 5).

At the time of Plaintiff's resignation, the Defendant had the civil service disciplinary hearing process available to Plaintiff. Id. at ¶¶ 4-5. The disciplinary hearing process would allow Plaintiff to appear with a representative and "put on her case at the CEO-level of the Hospital Authority." Id. at ¶ 4. Plaintiff could have appealed any termination to the Civil Service Commission. Id. at ¶ 6.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

> together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see</u> <u>Routman v. Automatic Data Processing Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a

5

> genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323.

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards . . . ." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex, 477 U.S. at 323; Fed. R. Civ. P. 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained that

> [t]he respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., Inc., 914 F.2d 790, 792 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 251-52) ("A court deciding a

motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law:

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> &ast; &ast; &ast;
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

> [i]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are

> indulgently treated.
>
> It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute . . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> 9. The trial court no longer has the duty to search the entire record to

> establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

For her claim under the ADA, Plaintiff may prove that she was discriminated against based upon her disability either through direct or indirect evidence. Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004) (citation omitted). Here, Plaintiff's proof of discrimination is by circumstantial evidence, and the evidentiary framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. See Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). Thus, Plaintiff must first establish a prima facie showing of discrimination by demonstrating that:

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was

replaced.

Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th Cir. 2011) (quoting Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007)). If Plaintiff makes such a showing, then the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment act. Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003). If the Defendant articulates such a reason, then the burden returns to Plaintiff to prove that the Defendant's proffered explanation is untrue or pretextual. Id. at 51-52.

The Defendant does not dispute that Plaintiff has a disability of which the Defendant was aware or that Plaintiff is otherwise qualified for her former position, but argues that Plaintiff did not suffer an adverse employment decision. (Docket Entry No. 26 at 2). Plaintiff contends, however, that her resignation on August 2, 2012 was a constructive discharge because her working environment forced her to quit. (Docket Entry No. 30 at 6-9).

For a constructive discharge claim, "both the employer's intent and the employee's objective feelings must be examined." Savage v. Gee, 665 F.3d 732, 739 (6th Cir. 2012) (citations omitted). Plaintiff must prove that: "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit." Hurtt v. Int'l Servs., Inc., 627 Fed.Appx. 414, 420 (6th Cir. 2015) (citing Savage, 665 F.3d at 739). It is undisputed that Plaintiff quit.

As to the first prong of the constructive discharge determination, the Sixth Circuit considers the following non-exclusive factors to determine whether a reasonable person would have felt compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job

> responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Laster v. City of Kalamazoo, 746 F.3d 714, 728 (6th Cir. 2014) (quoting Logan v. Denny's, Inc., 259 F.3d 558, 569 (6th Cir. 2001)). Plaintiff does not contend that she was subject to demotion, reduction in salary or job responsibilities, reassignment, or offered early retirement.

Plaintiff cites only one non-exclusive factor, arguing that she suffered "badgering, harassment, or humiliation by the [Defendant] calculated to encourage [her] resignation" due to "[t]he heightened scrutiny of [Plaintiff's] performance after each surgery and the hostile and threatening manner in which the August 2012 meeting occurred . . . ." (Docket Entry No. 30 at 8 n.1); Laster, 746 F.3d at 728. Yet, heightened scrutiny alone is insufficient to establish an objectively intolerable work environment. Cf. Ford v. Gen. Motors Corp., 305 F.3d 545, 554 (6th Cir. 2002) (finding constructive discharge where the plaintiff's employer subjected him to heightened scrutiny, transferred him to a job he would have difficulty doing, refused his requests for help or a workload reduction, and repeatedly threatened him with termination). As to Paugh's alleged yelling and slamming her hand on the table during the August 2012 meeting, a single occurrence of intemperate behavior does not constitute harassment calculated to encourage resignation. See Tuttle v. Oehler, No. 1:08 CV 288, 2011 WL 1298125, at *11 (N.D. Ohio Mar. 31, 2011) (citing Logan, 259 F.3d at 568-69) ("[Plaintiff's] complaints of staring, yelling, phone calls . . ., and two instances of physical contact by [a defendant], . . . do not demonstrate [plaintiff] suffered 'badgering, harassment, or humiliation' calculated to encourage his resignation.").

Plaintiff argues that her termination was imminent at the August 2012 meeting. (Docket Entry No. 30 at 7). The Defendant argues that Plaintiff was not confronted with an immediate choice to quit or be terminated because she had a remedy under the Defendant's civil service process. (Docket Entry No. 26 at 2-5 (citing Driggers v. City of Owensboro, 110 Fed.Appx. 499 (6th Cir. 2004) (unpublished)). In Driggers, a police officer under investigation by the police department was told by a city attorney that she would be "charged with multiple counts of misconduct unless she resigned." 110 Fed.Appx. at 506-07. The Sixth Circuit found that the officer's subsequent resignation did not constitute constructive discharge because "it was speculative for her to conclude that the inevitable result of disciplinary charges . . . would be her termination." Id. at 507. The Sixth Circuit also found that the officer "knew that she had the option of challenging the charges against her, but instead she voluntarily chose to resign . . . ." Id.

Here, applying Driggers, the Court concludes that the Defendant did not constructively discharge Plaintiff because Plaintiff chose to resign rather than pursue the Defendant's civil service disciplinary process. Based upon the undisputed facts, Plaintiff's supervisors were beginning disciplinary proceedings at the August 2012 meeting and told Plaintiff that a disciplinary hearing would be necessary. (Docket Entry No. 25 at ¶¶ 2, 10). Thus, it was the Defendant's intent to begin the formal disciplinary process, not terminate Plaintiff on the spot. See Savage, 665 F.3d at 739. As in Driggers, Plaintiff was aware of a disciplinary process, but chose to forego that remedy. 110 Fed.Appx. at 507. Although Plaintiff contends that she was forced to resign immediately at the August 2012 meeting because Gannon and Paugh would not accept her two weeks notice, Plaintiff had "an obligation not to assume the worst, and not to jump to conclusions too fast" concerning the outcome of the disciplinary hearing process. Id.; see Wilson v. Firestone Tire & Rubber Co., 938

F.2d 510, 516 (6th Cir. 1991) (quoting Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987)).

Plaintiff fails to cite any evidence that Gannon or Paugh had the authority to terminate Plaintiff at the August 2012 meeting. According to Plaintiff, Paugh told her that "the Board"—not Paugh or Gannon—would "decide her fate." (Docket Entry No. 30 at 7). Plaintiff's awareness of the available disciplinary process is further established by Plaintiff's acknowledgment that Gannon read forms at the meeting meant to give employees notice of their right to appeal termination decisions. Id. The undisputed facts reflect that Plaintiff was a civil service employee. (Docket Entry No. 25 at ¶ 3). According to the civil service rules and regulations, Plaintiff could not be subject to any discipline without a hearing, and Plaintiff could appear at the hearing with a representative. Id. at ¶ 4. In the event that the hearing process resulted in her termination, Plaintiff could have appealed that decision to the Civil Service Commission. Id. at ¶ 6.

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff was not constructively discharged because her proof fails to show circumstances so objectively intolerable that a reasonable employee would have felt compelled to resign. See Driggers, 110 Fed.Appx. at 507; see also Harris v. Sodders, No. 07-4398, 2009 WL 331633, at *3 (6th Cir. Feb. 11, 2009) (unpublished) (holding there was no constructive discharge in part because "[Defendant] could not terminate [plaintiff's] employment without the procedural safeguards provided to her as a civil service employee, which she must have been aware of . . . ."). Thus, Plaintiff cannot demonstrate that she suffered an adverse employment action. See Hurtt, 627 Fed.Appx. at 420. Without an adverse employment action, the Court concludes that Plaintiff cannot establish a prima facie case of discrimination under the ADA and this claim should be dismissed. See Whitfield, 639

F.3d at 258-59; see also Agnew v. BASF Corp., 286 F.3d 307, 311 (6th Cir. 2002) (citation omitted) ("[Plaintiff's] resignation was premature, and therefore he cannot make a submissible case of constructive discharge in order to establish a prima facie case of discrimination.").

Even if Plaintiff could establish the prima facie elements for ADA discrimination, Plaintiff fails to prove that the Defendant's articulated nondiscriminatory reasons were pretextual. See Raytheon Co., 540 U.S. at 50-52. "A plaintiff can demonstrate pretext by showing that the proferred reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 526 (6th Cir. 2008) (quoting Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000)).

The Defendant cites the undisputed facts of Plaintiff's "history of poor performance," seven warnings, counseling sessions, or improvement plans over the course of Plaintiff's employment. (Docket Entry No. 25 at ¶ 9; Docket Entry No. 26 at 5-6). The Defendant also cites Plaintiff "plac[ing] a patient's entire chart into the medical file of another patient" multiple times. (Docket Entry No. 25 at ¶ 10; Docket Entry No. 26 at 6-7). Although Plaintiff contends that all of her co-workers made mistakes, Plaintiff has not shown that the specific mistakes cited by the Defendant were insufficient to initiate disciplinary proceedings. See Mickey, 516 F.3d at 526. Further, while Plaintiff argues that Gannon addressed mistakes at the August 2012 meeting that Plaintiff made over the prior month, but were not previously brought to her attention, the undisputed facts show that Plaintiff received written counseling for performance below productivity goals on July 13, 2012, and a final written warning for inefficient performance with daily review on July 24, 2012. (Docket Entry No. 25 at ¶ 9). Thus, Plaintiff had prior awareness of these mistakes and has failed to show that the Defendant's actions were not motivated by her "history of poor performance." See Mickey, 516 F.3d

at 526.

As to her FMLA retaliation claim, Plaintiff must prove: (1) that she engaged in an activity protected by the FMLA; (2) that the exercise of her protected rights was known to the Defendant; (3) that the Defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. Arban v. West Pub. Corp., 345 F.3d 390, 404 (6th Cir. 2003). The McDonnell Douglas burden-shifting framework applies to FMLA retaliation claims. Romans v. Mich. Dep't of Human Servs., 668 F.3d 826, 842 (6th Cir. 2012). Here, as discussed above, Plaintiff cannot establish that the Defendant subjected her to an adverse employment act because her proof fails to establish that the Defendant constructively discharged her. Thus, the Court concludes that Plaintiff cannot establish a prima facie claim for FMLA retaliation and this claim should be dismissed. See Arban, 345 F.3d at 404. Moreover, as with Plaintiff's ADA discrimination claim, Plaintiff's FMLA retaliation claim fails even if Plaintiff had made the prima facie showing because Plaintiff has not shown that the Defendant's articulated nondiscriminatory reasons for its actions were pretextual. Romans, 668 F.3d at 842.

For these reasons, the Court concludes that the Defendant's motion for summary judgment (Docket Entry No. 24) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of March, 2016.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge